I'm here on behalf of Demario Barker. The District Court inappropriately considered the unreliable hearsay statements of Satori Carr in imposing the guideline enhancements against Demario Barker. We're not here to argue that the court can't consider or utilize hearsay statements in a sentencing hearing, but we do believe that the court erred in considering the unreliable hearsay statements of Satori Carr. First thing we need to do is look at the Ochoa Court, which set forth a standard to determine whether or not an out-of-court statement has the particularized guarantees of trustworthiness required by the Constitution. Judge Cardone Mr. Hayes, before you go too far, do you agree that if we find that the court properly considered Mr. Carr's statements, that the enhancements were proper? Mr. Hayes I think I have to agree with that, Your Honor, because in context of this particular case, if the court considers these statements reliable, then it meets the preponderance of evidence standards. It's our position, however, that these statements never should have been considered and certainly shouldn't have been considered as reliable or persuasive. Judge Cardone And you're not arguing this in terms of any provision of the Constitution, correct? You're not arguing that there's a Sixth Amendment right to confront? Mr. Hayes No, Your Honor, there's not a Sixth Amendment requirement that he has the confrontation of Mr. Carr. However, in order for these statements to be used against him, they need to be reliable. And I think that's the standard that the courts have used in the Ochoa Court set forth, the standard that courts should use in determining whether or not these statements should be considered at all. And the issue in Barker's case is that the court's considering what should have been presumed to be highly unreliable statements by Mr. Carr. And that's not, those aren't my words, those are the words of the is procured with the assistance of law enforcement, describes past events or was not subject to adversarial testing, that they should be put in this box over here that is considered highly presumed to be unreliable. Judge Cardone But why wouldn't the other evidence that the court relied on to essentially corroborate Mr. Carr's statements be sufficient? Specifically the body camera footage showed that Mr. Barker was talking to his wife after law enforcement had told her that they were searching the home and he couldn't go in. He had been at what I'll refer to as the stash house the night before. We know that immediately after Barker had the call with his wife that Barker then called Carr, and law enforcement surveillance saw shortly after that call Mr. Carr carrying out the bag that had the drugs and the gun in it. Why wouldn't that, which all occurred within a very, as the court said, tight chronology of events, be sufficient to corroborate Mr. Carr's statements? Judge Baird Well, Your Honor, I think the issue becomes all of the corroborating circumstances that the district court would have relied on, I don't think the allegations are necessarily products of what the allegations are against Mr. Barker. Certainly we can see... Judge Cardone I don't understand what you're... Judge Baird So certainly making a phone call to Mr. Carr in and of itself is not something that would subject Mr. Barker to any of these guideline enhancements. Simply having been... Judge Cardone And that's not what the district court found. The court specifically found it's all of this looking at the totality of the evidence and all of this happening in a tight chronology that was corroborated by law enforcement surveillance. Judge Baird The problem with looking at it that way, Your Honor, is you're presupposing that Mr. Carr is making truthful statements and making that expounding of his arguments. Judge Cardone I don't think you're presupposing. I think the court is using this additional evidence to help establish that they're truthful. Which is what happens in trials all the time. Judge Baird Sure. So the issue with this particular circumstances is Mr. Carr, for instance, had a warrant for his arrest. He was a fugitive of justice. The call from Mr. Barker simply could have been to say, hey, just so you know, my wife has been arrested. I don't know what's going to happen. There was no indication at that particular time... Judge Cardone The wife hadn't been arrested. Judge Baird Ms. Chelsea Holsey had been arrested. Judge Cardone I thought she was just told she couldn't go in. Judge Baird No. She was arrested during a traffic stop. She was criminally charged with money laundering. Judge Cardone Okay. Before. All right. I see what you're saying. Judge Baird And so she's arrested. Mr. Barker is actually in Las Vegas at the time, or Los Angeles. He's across the country. She calls him on a FaceTime call that is observed by officers. All that Mr. Barker knows at this point in time is that his wife has been arrested. He doesn't know that there are search warrants going on at other residents or that they're going to be. They haven't even happened yet. He has no idea why Chelsea has been arrested at that particular time. Ms. Chelsea Holsey But isn't it reasonable that Mr. Barker had been at the stash house the night before, that he knew what was in there, the drugs and the guns? Judge Baird Well, you're just taking a guess. And without the information... Ms. Chelsea Holsey Not with the other evidence. Judge Baird Well, only because Mr. Carr is telling you that he had the drugs there beforehand. Mr. Carr could have been the one responsible for those drugs. He could have been the one who brought those into the house. The only thing that's been excluded, that possibly is excluded, is because of Mr. Carr's unreliable hearsay statements. In many respects, Mr. Barker would have been better served in this particular case had he been criminally charged with those drugs because he would have the opportunity under the Sixth Amendment to cross-examine Mr. Carr and those hearsay statements would not have been admitted. Certainly, it would be hard to believe that without the statements of Mr. Carr that Mr. Barker could ever be convicted of those drugs or those guns. And if Mr. Carr did testify in a trial, you would get a jury instruction that would say, number one, that you should take into consideration that Mr. Carr is trying to work off his case potentially. You should take special care in... Ms. Chelsea Holsey Weren't those arguments made to the court here? Judge Baird They were. And so the issue with the court's ruling is the court comes to a conclusion that is not supporting the evidence that Mr. Carr are working together. In fact, on page... In the judge's conclusions, she refers on page 63, I believe, of the transcripts that there was a joint interest between Carr and Barker. However, that's specifically contradicted by the government's own agent, Collins, on So the court makes this leap of faith that Carr and Barker are somehow working together even though the government's own evidence has said that that's not true, that they aren't working together. And so when you look at the Ochoa test, the Ochoa test is saying the court should take a very large degree of skepticism. They should presume that this information is not trustworthy. And so what the court should have done is the court, before going into the corroborating evidence that could corroborate certainly what Mr. Carr is saying, but could also corroborate other things, such as Mr. Barker simply saying, hey, you have an arrest warrant. You might want to be careful because Chelsea just got arrested. Judge Holsey How much does Ochoa really help you when Ochoa was a case about a trial where the confrontation clause was at issue and where hearsay is not permitted as opposed to sentencing? Judge Baird Well, Ochoa has been incorporated by the court. It's cited in our brief, specifically the Jones case, and there's also another case. Judge Holsey And in-house, we distinguished it at a sentencing. Judge Baird Certainly, the distinction in large part becomes what the remedy is for accepting these unreliable statements. So in the past, the courts have sometimes certainly suggested that our ability to cross-examine the proponent of the hearsay evidence is sufficient to allow the court to consider that. And in this case, we had the opportunity certainly to cross-examine Agent Collins. But courts have in the past, they have reversed sentencing decisions on courts because of the information, the hearsay statements were deemed unreliable for purposes of establishing the preponderance of evidence standard in circumstances. In this particular case, the red flags from Carr were all over the place. And you look at, say, the side of the Ochoa test, he's a liar. The government knows he's a liar. He's lied to the government on at least two prior occasions that they're aware of because they know what he told them is just not truthful. Carr has a clear benefit to make allegations against Barker because- Judge Goldberg What did Barker do at sentencing to establish that beyond asserting it? Judge Baird Well, Barker had the opportunity certainly to cross-examine Collins to flush out these red flags of Mr. Carr. Judge Goldberg Right. In other words, the position seems to be that Carr is unreliable because Carr is a criminal. Carr is dealing drugs. Carr has every incentive to push this off on somebody else. But that's just simply, that's just an argument by your client. I mean, there are facts that point in the other direction. The district court obviously credited those facts. And all the defendant seems to be doing is saying, I'm going to win because I'm just going to continually assert that Carr is a liar. Judge Baird Well, it's our position, Your Honor, that the issue becomes- Judge Goldberg He didn't do anything. It's just assertion. Judge Baird The court should not have considered Carr's comments, Carr's statements. That's our position, is that if you set aside the unreliable statements of Carr, you certainly wouldn't be able to make a preponderance of evidence standard on any of these enhancements that have been brought forth against Barker. So the crux of the issue is that these statements never should have been considered by the court because they didn't pass the Ochoa test. And the court didn't even really address that in her ruling of why she was ignoring this very strong presumption that these statements would be unreliable. And to go back to- Judge Goldberg But in house, we said that presumption doesn't apply at sentencing. Judge Baird Well, again, I think that it's- they aren't necessarily apples to apples, Your Honor. I don't disagree with you on that. It becomes a fundamental fairness- Judge Goldberg You've just considered the reliability of the hearsay. I agree with that. But the presumptions that apply at trial where you can't admit hearsay and where the Sixth Amendment Confrontation Clause is at issue don't apply in the sentencing before the court. Judge Baird Well, I think the problem that's going to happen moving forward, Your Honor, again, is my example with Mr. Barker having been better off had he been criminally charged with this. Moving forward, you know, there's obviously some uncertainty of what's going to happen with acquitted conduct and how that affects guidelines. And certainly allowing the government to use unreliable hearsay information against defendants to increase their guideline enhancements is going to essentially distil the government, well, don't charge this stuff because if you charge this stuff, Mr. Barker is going to get an acquittal at trial because Mr. Carr is so unreliable. Just wait to sentencing and you can use these unreliable statements. They'll be considered. And for Mr. Barker, his guidelines were originally a 29, which was a recommended sentence of 151 to 188 months and ends up being 360 to life because of these statements from Mr. Carr. He would have been better off had he had at least the opportunity to try this case to a jury and then hopefully we would have been here and argued a different thing that this is acquitted conduct. And the public policy, I think, moving forward with that is that if the courts are allowed to consider what is clearly presumptively unreliable statements by a hearsay statement, that it's going to put people in a situation where they're better off being criminally OK. Thank you, Mr. Hayes. Yes, you're welcome. We'll hear from the government. May it please the court. My name is Jeremy Fugate and I represent the United States. First, I'd like to address the Ochoa case. It's been mentioned a lot. As the court said, that is a case involving the trial, the confrontation clause, and evidence against his penal interest. That case is not applicable here. The case law relevant here says that hearsay at sentencing can be supported by corroborating evidence. And in this particular case, the evidence more than corroborates those statements. The evidence that we have outside of the hearsay statements would support a preponderance of the evidence standard that the defendant did in fact meet the sentencing enhancements and the base offense level. In regards to the no corroborating evidence, Mr. Barker simply disagrees with the court's conclusion, which the case law is clear that the interpretation and the weighing of that evidence is clearly in the court's purview. Here, we have video evidence that shows Mr. Barker's wife contacted him and alerted him that his secondary residence was about to be searched. We have phone records that show that the defendant contacted Carr almost immediately after getting off the phone with his wife. Finally, we have surveillance footage that establishes that Mr. Barker spoke with Carr, and then Carr left the East Broadway residence with a bag containing 464 grams of methamphetamine and three firearms. All of this evidence supports the base offense level and sentencing enhancements. All of this evidence was presented at sentencing, and the defendant had a chance, Mr. Barker had a chance to contest that evidence, and did not. The hearsay statements pertaining to Secretary Carr are simply an additional piece of evidence that was brought by the United States that can be combined with the other evidence. All of that evidence together corroborates the fact that the sentencing enhancements and the base offense level should apply. When explaining the court's decision, the district court noted that she relied on body camera footage, phone records, the type of knowledge of events, and the fact that the defendant was at the East Broadway residence one day prior to the search in order to corroborate those statements. Is there anything in the record to support her statement about the defendant being there one day before? It looked like there was some confusion about the November 29th and November 30th. In the record, I believe the United States did put on evidence through the agent that he was there, in fact, the day before, and then he was not at the residence on the day of the search. The evidence about Carr's statements came in through an agent, correct? Correct, and Mr. Barker had an opportunity to cross-examine that agent and contest those statements. What did the agent say, if anything, regarding the relationship that was known to law enforcement between Carr and the defendant? He stated that he had spoke with Carr. As defense counsel said, he had given several different stories, but he was able to determine that they did have a relationship. The nature of that relationship is unclear at this time. Was there any surveillance that saw them at the house together? Not that I'm aware of. Are there any other questions? Given that it appears that there are not, I would note that the district court considered the totality of the evidence, which included the hearsay statements, the challenge to the reliability of those statements, and the cooperating evidence consisting of body camera footage, surveillance, and phone records, all of which would put this case beyond the reach of reversal on clear error grounds. That's for the reasons I have discussed today. The two controlled buys happened, there were two controlled buys, right, that made up the 216.2 grams of meth, and then you came in and then the 464 gets added, that was seized. The controlled buys that occurred, they occurred out of that same residence, correct? That is correct. Thus, as I stated a moment ago, the court considered all of the evidence, including the buys, the footage from the body camera, the technology of events, based on these reasons, and the reasons listed in our brief, I think the court should confirm the district court's ruling. Thank you. Okay, very well. Mr. Hayes, we'll give you one minute. Very briefly, number one, there isn't any evidence that Chelsea told Mr. Barker that that residence was going to be searched. She wouldn't have had any knowledge of that. She simply said she had been arrested. Number two, the court asked about... But isn't there testimony by the officer that Mr. Barker asked questions like, why are you being stopped? Do the police have a search warrant? Yeah, the answer is that she wouldn't have been able to answer. She was just arrested as part of a traffic stop. She had no idea what was going on at that particular time other than she was arrested and had the kids in her car. As to the question as to... Regarding Mr. Carr and the investigation around him, the question to Collins in the sentencing hearing was to Torrey Carr, the length of your investigation found to be a drug trafficking partner of Mr. Barker, and the answer was no from Agent Collins. Yet, the district court relied on some sort of connection of them being drug dealers together in sustaining the enhancements. The other thing just to add very briefly, the controlled buys were four months previous to this particular occasion. Those occurred during the summer. This was November 30th, so there is a large gap in time between when the controlled buys occurred and when the search warrant was actually issued. Okay. Questions? Very well. Mr. Hayes, thanks to you. Thank you for taking the case on appointment by the court. We appreciate service to your client and to the court. And thanks to the government as well. We'll take the appeal under advisement.